**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| RON O'NEAL, | : |
| Petitioner, | : Civil Action No. 09-4500 (RMB) |
| v. | : **O P I N I O N** |
| WARDEN GRONDOLSKY, | : |
| Respondent. | : |

**APPEARANCES:**

Ron O'Neal, <u>Pro</u> <u>Se</u>
70809-083
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

**BUMB, District Judge**

Petitioner, Ron O'Neal, is currently serving a federal criminal sentence at the Federal Correctional Institution ("FCI"), Fort Dix, New Jersey. He has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent is the warden of the FCI. Petitioner challenges a detainer lodged by the State of Virginia in the form of a warrant. For the reasons expressed below, this Court will dismiss the petition, without prejudice to the filing of a petition pursuant to 28 U.S.C. § 2254 after Petitioner exhausts remedies available in the courts of the Commonwealth of Virginia.

**BACKGROUND**

The following information is taken from Petitioner's petition and exhibits filed therewith.

Petitioner is currently serving a federal sentence of 57 months imprisonment.  Petitioner's projected release date is May 18, 2010.

On June 18, 2007, the Fredericksburg Police Department, Fredericksburg, Virginia, requested to have a detainer lodged against Petitioner in the form of warrant # WA17372 for Petitioner's arrest on a pending Virginia criminal charge for contempt of court.  In November 2008, officials at FCI Fort Dix sent a request on Petitioner's behalf for final disposition of the Virginia charges to the Assistant Commonwealth Attorney, Fredericksburg, Virginia.

On November 21, 2008, Virginia's Attorney sent a letter to FCI Fort Dix stating that they were in receipt of Petitioner's request for trial pursuant to the IAD, and that Petitioner had four warrants pending in the City of Fredericksburg.  However, it was the Commonwealth's position that the IAD applied only to untried indictments, informations and complaints, and not to felony warrants.  Thus, Virginia refused to take custody of Petitioner.

In June of 2009, Petitioner filed a letter to the Fredericksburg courts asking for the status on his motion for

speedy trial and motion on the IAD claims.  Petitioner states he received no response back.  On August 5, 2009, Petitioner then filed a dismissal motion in the Fredericksburg courts.  It does not appear that the motion has been adjudicated.

Petitioner contends that because Virginia failed to bring him to trial within 180 days of his request for final disposition of the Virginia charges, as required by the Interstate Agreement on Detainers, due process requires dismissal of the detainer, as well as the criminal charges.  Petitioner seeks an order for dismissal of the detainer and the Virginia charges.

## DISCUSSION

### A. Jurisdiction

Section 2241 provides in relevant part:

(c) The writ of habeas corpus shall not extend to a prisoner unless-
....

(3) He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(3).

To invoke habeas corpus review under § 2241, the petitioner must satisfy two jurisdictional requirements: the status requirement that the person be "in custody," and the substance requirement that the petition challenge the legality of that custody on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989);

1 James S. Liebman & Randy Hertz, <u>Federal Habeas Corpus Practice and Procedure</u> § 8.1 (4th ed. 2001).

A district court has jurisdiction under 28 U.S.C. § 2241(c)(3) to entertain a pretrial petition for habeas corpus brought by a person challenging a detainer lodged pursuant to an untried state indictment.  <u>See</u> <u>Maleng</u>, 490 U.S. at 490; <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484 (1973); <u>Mokone v. Fenton</u>, 710 F.2d 998, 999 (3d Cir. 1983); <u>Moore v. DeYoung</u>, 515 F.2d 437, 442, 443 (3d Cir. 1975); <u>Triano v. Superior Court of New Jersey, Law Div.</u>, 393 F. Supp. 1061, 1065 (D.N.J. 1975), <u>aff'd</u> 523 F.2d 1052 (3d Cir. 1975) (table).  Moreover, as the Interstate Agreement on Detainers Act ("IADA") is a congressionally sanctioned interstate compact within Art. I, § 10, of the United States Constitution, the petition presents a federal claim within the meaning of 28 U.S.C. § 2241.[1]  <u>See</u> <u>Carchman v. Nash</u>, 473 U.S. 716, 719 (1985); <u>Cuyler v. Adams</u>, 449 U.S. 433, 438-42 (1981); <u>Casper v. Ryan</u>, 822 F.2d 1283, 1288 (3d Cir. 1987), <u>cert.</u> <u>denied</u>, 484 U.S. 1012 (1988).  Although this Court has jurisdiction over the Petition, it is clear that habeas relief is not warranted.

---

[1]  The IADA has been adopted by the State of New Jersey. <u>See</u> N.J. Stat. Ann. § 2A:159A-1, <u>et</u> <u>seq.</u> ; <u>Carchman</u>, 473 U.S. at 719.

B.    **Removal of the Detainer by the BOP**

Petitioner asks this Court to order the Warden to remove, dismiss or otherwise disregard the detainer filed by Virginia officials. Without considering whether Petitioner has administratively exhausted this issue under the Bureau of Prisons' ("BOP") three-step Administrative Remedy Program, this Court finds that Petitioner is not entitled to such relief. The BOP's Program Statement 5800.15 provides:

> If an inmate says that his or her rights have been violated under the IAD, the inmate will be advised to contact the state authorities or his or her attorney.
>
> The Bureau does not decide the validity of the detainer or violation of any IAD provision.
>
> All detainers will remain in full force and effect, unless and until the charges from the "receiving" state are dismissed and/or the receiving state authorizes, in writing, the removal of the detainer.

Inmate Systems Management Manual, Program Statement 5800.15, Ch. 6 § 612.

> In addition, § 610(i) provides:
>
> If the inmate has not been brought to trial within 180 days from the date prosecuting officials received the IAD packet, CSD staff will correspond with the prosecutor ... calling attention to the lapse of the 180-day period.
> Only the state may authorize the removal of its detainer.
>
> The inmate must address any request regarding a possible violation of the IADA to the appropriate state court.

Id. at Ch. 6 § 610(i).

5

As federal law does not authorize the BOP to dismiss or disregard the pretrial Virginia detainer, Petitioner is not entitled to an order directing the BOP, or the Warden, to dismiss the detainer.

C.   **Dismissal of New Jersey Charges**

Petitioner asserts that the pending Virginia criminal charges should be dismissed because Virginia officials violated the IADA by failing to bring him to trial on the charges underlying the detainer within 180 days of his request for final disposition.

The purpose of the IADA is "to encourage the expeditious and orderly disposition of [outstanding criminal] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." 18 U.S.C. app. 2, Art. I.  "The word 'detainer,' as it is used in the Agreement, is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." United States ex rel. Esola v. Groomes, 520 F.2d 830, 838 (3d Cir. 1975) (citation and internal quotation marks omitted).  To achieve that end, Article III(a) requires that a defendant must be tried on outstanding criminal charges within 180 days after authorities in that state receive his request for final disposition.

Specifically, Article III provides:

> (a) Whenever ... there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: Provided, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.  The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.
>
> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
>
> (c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

18 U.S.C.A. App. 2 § 2 Art. III(a), (b), (c).

Article IV(e) of the IADA requires dismissal of the charges in the event that an action is not brought to trial within 180 days of the prosecutor and court's receipt of the request for

final disposition.  See 18 U.S.C.A. App. 2 § 2 Art. IV(e); Fex v. Michigan, 507 U.S. 43, 51 (1993) (prosecuting State's receipt of the request for final disposition starts the 180-day period); United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (inmate's IADA request must "contain sufficient information to alert the government that Article III has been invoked").  Specifically, Article IV(e) provides that:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C.A. App. 2 § 2 Art. IV(e).

The United States Court of Appeals for the Third Circuit has observed that "only the courts of the indicting state can enter an order that would effectively void the criminal charge" based on a violation of the IADA.  See Mokone v. Fento, 710 F.2d 998, 1003 (3d Cir. 1983).  Thus, the Court of Appeals has "held that a habeas petitioner seeking a speedy trial in another state, or seeking to bar prosecution of a charge upon which an out-of-state detainer is based, must exhaust the remedies of the state where the charge is pending."  Id. at 1002.  For example, in Moore v. DeYoung, 515 F.2d 437 (3d Cir. 1975), a New Jersey pre-trial detainee filed a habeas petition in this Court asserting denial of the right to a speedy trial and seeking discharge from custody

and an injunction against New Jersey criminal proceedings.  This Court granted pre-trial habeas relief, and the Court of Appeals for the Third Circuit reversed on the grounds that the petitioner had not exhausted the merits of his speedy trial claim before the New Jersey courts and the alleged denial of a speedy trial is not an extraordinary circumstance warranting pre-trial habeas relief. See Moore, 515 F.2d at 447.  As to exhaustion, the Court of Appeals found that

> Moore did not exhaust his state court remedies prior to application for federal habeas corpus relief.  This issue is still available to Moore as an affirmative defense at trial and thereafter, on appellate review.  Indeed, the trial court expressly recognized that additional evidence as to prejudice on the issue of delay could be adduced at trial.

Id. at 445.

The Court of Appeals expressly rejected Petitioner's argument that the constitutional right to a speedy trial is an extraordinary circumstance which bars not only a conviction for the underlying offense but a trial for that offense.  As the Court of Appeals explained,

> From the premise that he has a right not to stand trial, Moore proceeds to the conclusion that, to avoid the threatening state trial, there must be some pre-trial forum ... available to test the merits of his constitutional claim.  Otherwise, he argues, he would be required to undergo the rigors of trial to vindicate his claim that the state court can no longer bring him to trial ....
>
> We are not prepared to hold that ... the alleged denial of Moores' right to a speedy trial, constitutes such "extraordinary circumstances" as to require

> federal intervention prior to exhaustion of state court remedies. We perceive nothing in the nature of the speedy trial right to qualify it as a per se "extraordinary circumstance." We know of no authority, either pre-or post- Braden, supra, that excepts or singles out the constitutional issue of speedy trial as an extraordinary circumstance sufficient to dispense with the exhaustion requirement.

Id. at 446.

The Court of Appeals accordingly reversed the order granting pretrial habeas relief to Moore. "Moore having failed to exhaust his state remedies on the merits and having failed to present an 'extraordinary circumstance' which would warrant pre-trial, pre-exhaustion habeas corpus relief, we conclude that the district court erred as a matter of law in granting Moore's petition." Id. at 447 (footnote omitted); see also United States v. MacDonald, 435 U.S. 850, 861 (1978) (Speedy Trial Clause "does not, either on its face or according to the decisions of this Court, encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all").[2]

---

[2] Other courts of appeals have similarly dismissed pretrial IADA habeas challenges to a detainer on the ground that "Petitioner merely seeks to litigate a federal defense to a criminal charge prematurely in federal court." Knox v. State of Wyoming, 959 F.2d 866, 868 (10th Cir. 1992) (dismissing federal prisoner's 2241 petition challenging Wyoming detainer under IADA where petitioner has yet to be sentenced and appeal his IADA claims); see also Kerns v. Turner, 837 F.2d 336 (8th Cir. 1988) (dismissing § 2241 petition filed by federal prisoner awaiting sentencing on Missouri charge who challenged future state imprisonment as violation of IADA).

In this case, Petitioner asserts that he requested final disposition of the Virginia charges but that the Commonwealth's officials failed to bring him to trial within 180 days. To the extent Petitioner seeks dismissal of the Virginia charges, pretrial habeas relief is premature because Petitioner has not presented this affirmative defense to the Virginia courts. As the Court of Appeals explained,

> Petitioner ... will have an opportunity to raise his claimed denial of the right to a speedy trial during his state trial and in any subsequent appellate proceedings in the state courts. Once he has exhausted state court remedies, the federal courts will, of course, be open to him, if need be, to entertain any petition for habeas corpus relief which may be presented. These procedures amply serve to protect [Petitioner]'s constitutional rights without pre-trial federal intervention in the orderly functioning of state criminal processes.

Moore, 515 F.2d at 449; see also United States v. Castor, 937 F.2d 293, 296-297 (7th Cir. 1991); Dickerson v. State of Louisiana, 816 F.2d 220, 225-227 (5th Cir. 1987); Atkins v. State of Michigan, 644 F.2d 543, 545-547 (6th Cir. 1981); Carden v. State of Montana, 626 F.2d 82 (9th Cir. 1980).

Because Petitioner failed to exhaust his IADA claim before the Virginia courts, this Court will dismiss the claim seeking dismissal of the Virginia charges, without prejudice to bringing the claim in a petition under 28 U.S.C. § 2254 after exhaustion of state court remedies.

**D.     Petitioner's Participation in the Residential Drug Abuse Program ("RDAP")**

Petitioner alleges that his constitutional rights have been violated because he "has a constitutional right to benefit from the completion of the 500 hr. drug program and the reduction in sentence from same," and that because of the detainer, he will not receive that benefit.

Petitioner has no due process liberty interest in early release following his completion of RDAP.  Pursuant to Title 18 of the United States Code, Section 3621(e), and as an incentive for prisoners' successful completion of substance abuse treatment, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."  18 U.S.C. § 3621(e)(2)(B).  To complete the BOP treatment program, and therefore to become eligible for early release, an inmate must complete all phases of the treatment program, including the community treatment component which follows the unit-based residential treatment program that Petitioner completed.  <u>See</u> 28 C.F.R. §§ 550.53, 550.55.  Inmates with a detainer cannot participate in the community treatment program and consequently cannot be eligible for early release.  <u>See</u> BOP Program Statement 5331.02 § 7(a); BOP

12

Program Statement 7310.04 § 10(f); James v. DeRosa, No. 04-3808, 2005 WL 2247951, at *3 (D.N.J. Sept. 14, 2005).

Petitioner's inability to pursue early release due to his detainer does not implicate his due process rights, for he had no liberty interest in a sentence reduction under Section 3621(e). See Richardson v. Joslin, 501 F.3d 415, 419-20 (5th Cir. 2007); Rublee v. Fleming, 160 F.3d 213, 217-18 (5th Cir. 1998), cited with approval by Becerra v. Miner, 248 Fed. App'x 368, 370 (3d Cir. 2007); Hugel v. Bledsoe, No. 08-1050, 2009 WL 1406252, at *4 (M.D. Pa. May 18, 2009); Marine v. Quintana, No. 08-333, 2009 WL 1065915, at *11 (W.D. Pa. Apr. 20, 2009). The Due Process clause itself does not create a liberty interest in early release under Section 3621(e) because requiring Petitioner to serve the remainder of his original sentence "is not outside what a prisoner 'may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'" Richardson, 501 F.3d at 419-20; see Becerra, 248 Fed. App'x at 370. Nor does Section 3621(e) create a liberty interest, because the determination whether to release a particular inmate is left to the discretion of the BOP. See 18 U.S.C. § 3621(e)(2)(B) ("The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons ...") (emphasis added); see Lopez v. Davis, 531 U.S. 230, 241 (2001) ("When an eligible

prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."). There is not the necessary mandatory language in Section 3621(e) and so Petitioner has no statutory right to early release under Section 3621(e).  See Richardson, 501 F.3d at 419-20; Rublee, 160 F.3d at 217-18, cited with approval by Becerra, 248 Fed. App'x at 370; see Meachum v. Fano, 427 U.S. 215, 226-28 (1976) (holding that a statute which grants the prison administration discretion does not confer a right on an inmate).

Therefore, Petitioner's claim that his constitutional rights have been violated due to the detainer is without merit and will be denied.

## CONCLUSION

Based on the foregoing, this Court will dismiss the petition without prejudice.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: March 26, 2010

14